IN the MATTER OF the DISCIPLINARY PROCEEDINGS AGAINST David A. SUEMNICK, Attorney at Law.

Supreme Court

*No. 81–1525–D. Submitted on briefs June 4, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 298.)

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

For the appellant the cause was submitted on the briefs of *J. Robert Kaftan* and *Kaftan, Kaftan, Kaftan, Van Egeren, Ostrow, Gilson & Geimer*, S.C., of Green Bay.

For the Board of Attorneys Professional Responsibility the cause was submitted on the brief of *Francis J. Slattery* of Oshkosh.

This is an appeal by the respondent attorney from the report and recommendation of the referee that the respondent's license to practice law in Wisconsin be suspended for six months and that he pay the costs of this disciplinary proceeding.

On August 10, 1981, the Board of Attorneys Professional Responsibility (Board) filed a complaint against the respondent, an attorney who was admitted to practice law in Wisconsin in 1964, and who practices in Green Bay. It alleged that in 1978, he was retained by a client to represent her in a worker's compensation claim and in late 1979, was requested by her to file the claim on her behalf. The respondent advised the client that a hearing was held in the matter in November of 1979, and that the court had found in her favor, awarded her a 12 percent disability and ordered her employer to pay her within 30 days. Twice during 1980, the respondent told the client that penalties had been assessed against her employer for failure to pay. In October, 1980, the respondent paid the client from his general income fund moneys which he indicated were from the worker's compensation settlement.

During the course of this representation, the client had applied for social security benefits, and the social security office requested a copy of the worker's compen-

sation settlement. The client asked the respondent to send a copy of the settlement to the employer, and when he failed to do so, the client contacted the worker's compensation department and was advised that no claim had been filed in the matter. The Board alleged that such conduct constituted neglect of a legal matter, in violation of SCR 20.32(3), and failure to carry out a contract of employment, in violation of SCR 20.35(1)(b). It further alleged that the respondent violated SCR 20.04(4) by misrepresenting facts to the client and perpetrating a fraud upon her, including his representations that the checks made out to her from his general income fund were from the compensation claim.

We referred the matter to the Hon. Franklin W. Clarke as referee pursuant to SCR 21.09(4). The respondent then filed his answer to the complaint, admitting the allegations and affirmatively alleging that he had spent over $4,000 of his own funds to avoid financial loss to the client arising out of his conduct prior to any complaint being made to the Board. He also alleged that because the employer had denied the client's claim in writing, her claim remained viable. He also alleged that he had turned over that file to the client, advising her that, in his opinion, she might pursue the claim. The answer also alleged that the respondent entered into an agreement with his secretary and with three Green Bay attorneys pursuant to which his files are to be periodically reviewed to protect against the recurrence of an incident such as this.

On October 15, 1981, the Board filed an amended complaint adding a second count of unprofessional conduct against the respondent. It alleged that he was retained by three clients to represent them in a personal injury action. The proposed defendant's insurer offered to settle the three claims in the total amount of $2,800 in June, 1978. The Board alleged that these offers were

never relayed to the clients, that no settlement was ever effected by the parties and that no lawsuit was ever commenced by the respondent. It alleged that the respondent never satisfactorily responded to his clients' repeated requests for information and that at one point he advised them that he had obtained a settlement in the matter and had them come to his office to endorse a settlement check. They did so, but no payment was ever made to them. Ultimately, the statute of limitations ran on the clients' claims. The Board alleged that such conduct violated SCR 20.32(3) as neglect of a legal matter and SCR 20.35(1)(b) as a failure to carry out a contract of employment. It was also alleged that the respondent violated SCR 20.04(4) by misrepresenting facts to the clients and perpetrating a fraud upon them.

The respondent filed an answer to the amended complaint on October 26, 1981. As to the matter alleged in the original complaint, he stated that the client had retained the services of another attorney, who informed the respondent's attorney that he had not yet determined whether he would commence a worker's compensation action on behalf of the client. On the allegations contained in the amended complaint, the respondent admitted that no settlement was ever effected in the personal injury matter and that no lawsuit was commenced. He admitted that he told the clients that he obtained a settlement for a sum of $8,500, but he denied that the clients ever signed a check or that he told them that he needed such a check to deposit into his trust account. He alleged that he made up a release which the clients were requested to sign and did sign, that no payments were ever received by the clients and that he offered to pay them $8,500.

In December, 1981, the respondent and the Board entered into a stipulation of facts by which the respondent admitted the allegations of unprofessional conduct con-

tained in both the original and the amended complaints, except that there remained in dispute whether the clients in the personal injury matter signed a check or a release as a closing document in the "settlement" of their claims. The stipulation also noted that the respondent had been publicly reprimanded by this court in April, 1974, as a result of three cases of similar conduct. *State v. Suemnick,* 63 Wis. 2d 117, 216 N.W.2d 753 (1974). It stated that there was no evidence in this matter, as there was none in the 1974 matter, of any pecuniary or other personal gain by Suemnick.

The referee filed his report with the court on January 19, 1982, in which he made findings consistent with the stipulation and concluded that the respondent's conduct in both matters violated SCR 20.04(4), 20.32(3) and 20.35(1)(b). As to his recommendation for discipline, the referee noted several factors which would favor leniency: the respondent and his attorney were most cooperative and candid throughout the disciplinary proceeding; the respondent paid one client $4,000, making no charge for his services, even though he believed there was no merit in her claim, which he felt was supported by the fact that her subsequent attorney did not pursue it; he paid his other clients $8,500 in settlement of their claims for which the insurer had offered $2,800; a plan had been developed to monitor his law business to prevent any recurrence of this type of misconduct; he has the confidence of client organizations which have employed him in the past and state their intention to continue to do so.

On the other hand, the referee noted that in 1974 the respondent was publicly reprimanded for the same type of misconduct and that a monitoring system much like the one now reported was set up at that time but was not pursued because it appeared that the respondent's practice was proceeding satisfactorily. The referee then

concluded that the facts warrant a suspension and the imposition of costs, the extent of both of which should reflect the mitigating factors set forth in his report. The referee recommended that the respondent's license be suspended for six months and that he pay the costs of the disciplinary proceeding, not to exceed $750.

The respondent appealed from the referee's report and recommendation and argues that the suspension of his license is not appropriate discipline in this case. In his brief, the respondent states that he paid from his own funds the sum of $4,000 to one client, who did not have a valid claim to worker's compensation, and the sum of $8,500 to other clients, whose personal injury claims were valued by an insurer at approximately one-third that amount. Further, he indicates that those payments were made at his own instigation, not as the result of complaints having been made to the Board. The respondent takes the position that he has, in effect, fined himself $12,500 for his misconduct in these two matters, which he characterizes as the result of his difficulty in disappointing a client by stating that he or she has no case or has a case with very limited damages. Finally, he argues that a suspension of his license will have an unwarrantedly adverse effect upon himself, a respected member of the local legal community, and upon many of his clients, who have relied upon him for years.

In its brief, the Board argues that the recommended six-month suspension of the respondent's license is appropriate. It takes issue with the respondent's contentions that the worker's compensation claim was without merit and that the payment he made to the clients in the personal injury matter probably exceeded the total of their three claims. The Board states that there was no basis in the record indicating that such was the case. It argues that a suspension is warranted to protect the public from such conduct, to impress upon the respondent

the necessity for rehabilitating himself, especially in light of his prior public reprimand, and to deter other attorneys from like conduct. In addition to the neglect of legal matters and the failure to carry out a contract for representation, the Board points to the false statements made by the respondent to his clients as constituting dishonesty, deceit and misrepresentation, whether or not the clients were subsequently made whole from moneys out of the respondent's own funds.

We agree with the referee's conclusion that the respondent's conduct in these matters violated SCR 20.04 (4), 20.32(3) and 20.35(1)(b). While we recognize that the record contains several mitigating factors, this is the same kind of misconduct for which we reprimanded him in 1974. At that time we said: "It goes without saying that the cornerstone of an attorney-client relationship must be a feeling of absolute trust in the attorney by the client. When Attorney Suemnick made deliberate misrepresentations to his clients, he eroded that trust and confidence not only as to himself but as to the entire legal profession." *State v. Suemnick,* at 118. This is equally applicable in the present case.

The referee concluded that the respondent's conduct warrants a suspension of his license to practice law and the imposition of costs, the extent of both of which should reflect the mitigating factors contained in the record. We agree that a six-month suspension of the respondent's license is appropriate discipline in this matter, but we believe the full costs of the proceeding should be paid by the respondent.

It is ordered that the license of David A. Suemnick to practice law in Wisconsin is suspended for six months, commencing August 1, 1982.

It is further ordered that on or before August 31, 1982, David A. Suemnick pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary

proceeding in the amount of $676.59, provided that if the costs are not paid within the time specified, the respondent's license to practice law shall be suspended forthwith.